UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PATRICIA LEE ROHRING,

                              Plaintiff,

        v.

PEGASUS SUPPORT SERVICES, LLC,
RICHARD TIBBETS, and
KAY TIBBETS,

                              Defendants.

---

1:19-CV-00905 JLS (MJR)

REPORT AND
RECOMMENDATION

## **INTRODUCTION**

This case has been referred to the undersigned by the District Court, pursuant to Section 636(b)(1) of Title 28 of the United States Code, for all pretrial matters and for hearing and reporting on dispositive motions.[1]  (Dkt. Nos. 22, 32)  Before the Court is defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 28).  For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## **FACTS AND PROCEDURAL BACKGROUND**

Plaintiff, acting *pro se*, filed this disability discrimination action in July 2019.  (Dkt. No. 1)  She alleged that she has a disability and that her employer, Pegasus Support Services, LLC ("Pegasus"), refused to grant her accommodation requests.  (*Id.* at 5)  She asserted claims for failure to accommodate and for retaliation under the Americans with

---

[1] This case was originally assigned to the Hon. Lawrence J. Vilardo before being transferred to the Hon. John L. Sinatra, Jr.  (Dkt. No. 18)  District Judge Sinatra then referred all pretrial matters to the Hon. Hugh B. Scott (Dkt. No. 22), but the referral has now been transferred to the undersigned.  (Dkt. No. 32)

1

Disabilities Act ("ADA") and New York State Human Rights Law ("NYSHRL"). (*Id.* at 1-2, 4)  In October 2019, the District Court granted plaintiff's motion to proceed *in forma pauperis*. (Dkt. No. 3)  Furthermore, the Court screened the complaint pursuant to 28 U.S.C. § 1915 and concluded that plaintiff's claims could proceed against Pegasus but that, in the absence of additional allegations, the individual defendants would be dismissed from the action.[2]  (*Id.* at 2-3)

Plaintiff filed her amended complaint in December 2019.  (Dkt. No. 10)  The amended complaint is largely identical to the original complaint.  To address the individual defendants' liability, however, plaintiff clarified that Richard and Kay Tibbetts were the two executives who denied her accommodation requests.  (*Id.* at 5)  Soon after plaintiff filed her amended complaint, defendants moved to dismiss the complaint under Rule 12(b)(6) or for a more definite statement under Rule 12(e).  They argued that the amended complaint did not identify "the nature of Plaintiff's disability, her limitations, which essential functions of her job she was unable to perform, the reasonable accommodations she claims to have needed and was denied, or the discriminatory or retaliatory conduct about which she complains."  (Dkt. No. 13-1 at 6)  Plaintiff responded by filing a motion to appoint counsel.  (Dkt. No. 19)  Magistrate Judge Scott granted plaintiff's motion to appoint counsel and granted defendants' motion insofar as they asked for a more definite statement.  (Dkt. No. 23)  With the assistance of counsel, Plaintiff has now filed a supplemental statement (Dkt. No. 26), and defendants have again moved to dismiss her claims (Dkt. No. 28).

---

[2] District Judge Vilardo also consolidated plaintiff's current action with one she had previously brought against the same defendants.  (Dkt. No. 3 at 3-4)

Viewing plaintiff's amended complaint and her supplemental statement in the light most favorable to her, she alleges as follows.  Plaintiff suffers from lumbar and cervical disc herniation, chronic lower back pain, bilateral foot pain, and an anxiety disorder.  (Dkt. No. 26 at 1)  Her physical impairments "result in daily pain" that is "largely manageable," except when "intermittent and wholly unpredictable flare ups occur."  (*Id.*)  During a flare-up, plaintiff is substantially limited in her ability to get out of bed, use the restroom, ambulate, dress herself, sit, stand, drive, bend, lift, and stretch.  Furthermore, plaintiff has difficulty driving in "bad weather conditions" due to "both her physical limitations and her anxiety disorder."  (*Id.* at 2)

Plaintiff has worked as a storekeeper for Pegasus for a number of years.  (Dkt. Nos. 10, 26)  Richard Tibbetts is Pegasus's president, and Kay Tibbets is its vice president.  (*Id.*)  In August 2016, plaintiff was wrongfully terminated due to disability discrimination, and she was reinstated to her current position in August 2017.  (*Id.*)  At that time, plaintiff requested several accommodations for her impairments.  (*Id.*)  To account for her acute, debilitating flare-ups, she requested (1) four days of leave per month, (2) an extended window in which to punch in (between 15 and 30 minutes after the designated start time), and (3) waiver of the policy that employees must call in at least one hour before their shift if they will be late or absent.  (Dkt No. 10 at 6; Dkt. No. 26 at 2; Dkt. No. 30 at 5)  To account for her daily pain, plaintiff requested (4) extra workday breaks so that she could "stand[] and walk[] away from her workstation."  (Dkt. No. 26 at 2)  Finally, to account for the combined effect of her physical impairments and anxiety, plaintiff requested (5) "flexibility in scheduling during bad weather conditions."  (*Id.*)

Plaintiff spoke with Human Resources, her supervisors, and Kay Tibbetts about her requests. She completed Pegasus's "Medical Questionnaire" form and provided medical documentation supporting each requested accommodation. Nevertheless, defendants denied her requests and refused to offer any accommodation. (Dkt. No. 10 at 5-6; Dkt. No. 26 at 3).

Plaintiff filed a discrimination charge with the EEOC in January 2018 and received a right-to-sue letter in April 2019. (Dkt. No. 10 at 6-8) Plaintiff thereafter filed the present action.

## DISCUSSION

Defendants move to dismiss all of plaintiff's claims. With respect to the retaliation claim, defendants assert that plaintiff has alleged "no facts" to support a retaliation claim. (Dkt. No. 28-1 at 6 n.2) As to the failure-to-accommodate claims, defendants raise three arguments: (1) plaintiff failed to plead that defendants did not offer her an effective accommodation in lieu of her requested accommodations; (2) plaintiff failed to plead that she required an accommodation to perform the essential functions of her job; and (3) plaintiff's requested accommodations are unreasonable as a matter of law. For the reasons discussed below, the Court recommends that the retaliation claims be dismissed but that the failure-to-accommodate claims be allowed to proceed.

### Motion to Dismiss Standard

In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept as true all of the well-pleaded factual allegations in the complaint and must not dismiss the action unless convinced that the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bloor v. Carro, Spanbock Londin, Rodman & Fass*, 754 F.2d

57, 61 (2d Cir. 1985) (*quoting Conley v. Gibson*, 335 U.S. 41, 45-46 (1957)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face.")  The court considers "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

### *Plaintiff's Retaliation Claims*

In her original and amended form complaints, plaintiff checked boxes indicating that she is raising claims for retaliation, seemingly under both the ADA and NYSHRL. (Dkt. No. 1 at 1-2, 4; Dkt. No. 10 at 1-2, 3-4).  Defendants move to dismiss the retaliation claims because plaintiff alleges no facts to support them.  (Dkt. No. 28-1 at 6 n.2)  In her opposition brief, plaintiff responds to defendants' arguments on her failure-to-accommodate claims but does not address or even mention her retaliation claims.  (Dkt. No. 30)

"[I]n the case of a counseled party, a court may . . . infer from a party's partial opposition that relevant claims . . . that are not defended have been abandoned." *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) (discussing in context of summary judgment motion); *see Sherman v. City of New York*, No. 18-CV-6907, 2020 WL 6873453, at *10 (E.D.N.Y. Nov. 23, 2020) (collecting cases in context of Rule 12(b)(6) motion). Such an inference is appropriate in this case.  Plaintiff is represented by counsel and her opposition brief entirely fails to address defendants' argument that her retaliation claims should be dismissed as a matter of law.  Accordingly, the Court finds that plaintiff has abandoned her retaliation claims and recommends that these claims be dismissed.

*Plaintiff's Failure-to-Accommodate Claims*

Under the ADA, disability discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability." 42 U.S.C. § 12112(b)(5)(A). "To establish a prima facie case for a failure to accommodate, a plaintiff must show (1) that she is an individual who has a disability within the meaning of the statute, (2) that an employer covered by the statute had notice of her disability, (3) that with reasonable accommodation, she could perform the essential functions of the position, and (4) that the employer has refused to make such accommodations." *Sobhi v. Sociedad Textil Lonia Corp.*, No. 13-CV-8073, 2014 WL 7474338, at *5 (S.D.N.Y. Dec. 30, 2014) (internal quotation marks, brackets, and ellipsis omitted). The standard under the NYSHRL is, for all purposes relevant to defendants' arguments, the same as under the ADA. *Id.* at *6.

As noted above, defendants raise three arguments in support of their motion to dismiss the failure-to-accommodate claims. The Court examines each argument in turn.

First, defendants contend that plaintiff failed to plead that defendants "did not accommodate her or offer her an otherwise effective accommodation." (Dkt. No. 28-1 at 12) The Court disagrees. Read liberally, the pleadings allege that defendants rejected plaintiff's request and did not offer any alternative accommodations. (Dkt. No. 10 at 5 (alleging that defendants denied plaintiff's requests and that the parties "were unable to come to any sort of agreement"); *id.* at 6 (alleging that defendants "did not offer me any effective alternative"); Dkt. No. 26 at 3 (alleging that defendants "declined to offer her accommodations"). Consequently, defendants are not entitled to dismissal on this basis.

6

Second, defendants highlight plaintiff's allegation that she "has been able to fulfill the responsibilities of her employment" despite her impairments. (Dkt. No. 26 at 2) Seizing on this language, defendants assert that plaintiff, by her own admission, can perform her job without any accommodations. Defendants argue that plaintiff is essentially seeking an accommodation for her "personal benefit" or "convenience," which employers are not required to provide. (Dkt. No. 28-1 at 9)

The Court rejects defendants' argument. One could arguably read plaintiff's pleadings, as defendants do, to mean that plaintiff has impairments but that those impairments do not interfere with her ability to fulfill any of "the responsibilities of her employment as a Storekeeper." (Dkt. No. 26 at 2) However, this reading is the least favorable interpretation of plaintiff's allegations. Reading the pleadings in the light most favorable to plaintiff—as the Court is required to do at this juncture—the Court understands plaintiff to be arguing that her impairments cause a fluctuating degree of severe pain that has yet to impact her job performance. Specifically, plaintiff alleges that her back, neck, and foot impairments "result in daily pain" that is "largely manageable." (Dkt. No. 26 at 1) During flare-ups, however, the pain worsens to the point that she has difficulty even sitting, standing, or driving. Plaintiff alleges that she has heretofore been able to work through the pain and fulfill her responsibilities as a storekeeper, but she requests accommodations that would ease her daily pain at work (*i.e.*, the additional breaks from her workstation) and would give her some flexibility when faced with an acute, unforeseen flare-up of pain before her shift (*i.e.*, the scheduling and absence accommodations). (Dkt. No. 26 at 2)

At least facially, plaintiff's requests appear to be the sorts of accommodations that are cognizable under the ADA and NYSHRL. A reasonable accommodation "is one that enables an individual with a disability to perform the essential functions of that position *or to enjoy equal benefits and privileges of employment.*" *Noll v. IBM Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (emphasis added; internal quotation marks, ellipsis, and brackets omitted). Consistent with that broad definition, courts have held that a reasonable accommodation may include adjustments that allow the employee to work without pain. *See, e.g., Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 239 (D.C. Cir. 2018) ("A reasonable jury could conclude that forcing [the employee] to work with pain when that pain could be alleviated by his requested accommodation violates the ADA."); *Gleed v. AT&T Mobility Servs., LLC*, 613 F. App'x 535, 538 (6th Cir. 2015) (summary order) (rejecting the argument that if an employee "is physically capable of doing his job —no matter the pain or risk to his health—then [the employer] ha[s] no obligation to provide him with any accommodation, reasonable or not"). Defendants do not present any case law for the contrary proposition—that a disabled employee need not be afforded an accommodation under the ADA so long as it is physically possible for the employee to perform the work, regardless of the severity of the pain such work causes. Indeed, defendants do not address plaintiff's pain allegations at all; they confine their analysis to plaintiff's concession that she could fulfill her job responsibilities. Accordingly, in light of the case law cited above, defendants are not entitled to dismissal on this basis. *See Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 786 (W.D.N.Y. 2017) (noting that it is the "movant's burden to show why dismissal is warranted on a 12(b)(6) motion").

Third, defendants argue that "employer attendance expectations constitute essential job functions," such that plaintiff's accommodation requests "are unreasonable as a matter of law." (Dkt. No. 28-1 at 11)  The Court concludes that this issue cannot be resolved at this juncture.

A reasonable accommodation can "never involve the elimination of an essential function of a job." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003). Because punctual and consistent attendance is "an essential function of virtually every job," *Vandenbroek v. PSEG Power, CT LLC*, 356 F. App'x 457, 460 (2d Cir. 2009) (summary order), courts often find requests for excessive leave or scheduling flexibility to be unreasonable.  *See, e.g., Maysonet v. Valley Nat'l Bank*, No. 17-CV-3939, 2019 WL 1368327, at *5 (S.D.N.Y. Mar. 25, 2019) (collecting cases).

Still, in *McMillan v. City of New York*, 711 F.3d 120 (2d Cir. 2013), the Second Circuit unambiguously held that "[p]hysical presence at or by a specific time is not, as a matter of law, an essential function of *all* employment."  *McMillan*, 711 F.3d at 126 (emphasis added).  The court went on to note that, "[w]hile a timely arrival is normally an essential function, a court must still conduct a fact-specific inquiry." *Id.*; *see also Ray v. Weit*, 708 F. App'x 719, 722 (2d Cir. 2017) (summary order) (noting that "reasonable accommodations can include a modified work schedule").  To determine whether a function is essential, a court must consider a "number of relevant factors," including "the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions."  *McMillan*, 711 F.3d at 126.

Thus, contrary to defendants' argument, the Court cannot dismiss plaintiff's claims solely on the general proposition that "employer attendance expectations constitute essential job functions." (Dkt. No. 28-1 at 11)  In light of *McMillan*, the Court must conduct a "penetrating factual analysis" of *plaintiff's* particular job duties to determine whether and to what extent attendance and punctuality are essential job functions.  *McMillan*, 711 F.3d at 126.  Similarly, to determine whether a requested accommodation is reasonable, the Court must engage in a "fact-specific inquiry" and consider, "among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it."  *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995).

The present record is insufficient to address these issues.  The Court does not have any documentation to determine the essential functions of plaintiff's job, such as written job descriptions, affidavits from Pegasus's officers or supervisors, or testimony from current employees.  Nor is the scope of plaintiff's requested accommodations entirely clear.  Defendants read the amended complaint to mean that plaintiff essentially requested a "permanent intermittent accommodation that would have allowed her to disregard [its] attendance, scheduling, and break expectations." (Dkt. No. 28-1 at 11)  By contrast, plaintiff states that she requests only "mild flexibility" in the "start window" and "call-in procedures" on those infrequent days when she has a flare-up (Dkt. No. 30 at 5), along with an "occasional" workday break from sitting and/or standing (Dkt. No. 26 at 2).

Moreover, the reasonableness of plaintiff's requests may also turn on how often she expects to invoke these accommodations and whether her job duties are such that her absence or delay will not impose an undue burden on Pegasus's operations.  While

it may be the case that plaintiff's claim that she was denied a reasonable accommodation would not survive summary judgment, these are factual questions that the Court cannot currently answer and are better addressed after discovery.  *See Miller v. Kendall*, No. 14-CV-393, 2016 WL 4472748, at *2 (W.D.N.Y. Aug. 25, 2016) ("[T]he nature of a job's essential functions is a fact-bound question ill-suited for resolution on a motion to dismiss."); *Lewis v. Livingston Cty. Ctr. for Nursing & Rehab.*, 30 F. Supp. 3d 196, 211 (W.D.N.Y. 2014) (collecting cases and concluding that whether an accommodation is reasonable is a question "better reserved for summary judgment or trial rather than the pleading stage").  At present, plaintiff has sufficiently pleaded a *prima facie* case for failure to accommodate under the ADA and NYSHRL: she alleges that she has several impairments that constitute disabilities (Dkt. No. 26 at 1); that defendants had notice of these disabilities (Dkt. No. 10 at 5; Dkt. No. 26 at 2); that she could perform the essential functions of the job with reasonable accommodations (Dkt. No. 10 at 3; Dkt. No. 26 at 2); and that defendants refused to make any accommodations (Dkt. No. 26 at 3).  *See Lewis*, 30 F. Supp. 3d at 210.

In sum, none of defendants' arguments justifies dismissal of plaintiff's failure-to-accommodate claims under the ADA and NYSHRL at this stage of the lawsuit.

## CONCLUSION

For the foregoing reasons, the Court recommends that defendants' motion to dismiss the amended complaint (Dkt. No. 28) be granted in part and denied in part, in that plaintiff's retaliation claims should be dismissed while her failure-to-accommodate claims should be allowed to proceed.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

12

**SO ORDERED.**

DATED:      March 17, 2021
            Buffalo, New York

                                        _____
                                        HONORABLE MICHAEL J. ROEMER
                                        United States Magistrate Judge